**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2103-24

GWENEVERE LOVE,

    Plaintiff-Appellant,

v.

ACME MARKETS, INC.,
ACME, GREEN MEADOWS
LANDSCAPING, INC., and
SNOW X, INC.,

    Defendants-Respondents.

_____

Submitted March 4, 2026 – Decided May 20, 2026

Before Judges Gummer and Jacobs.

On appeal from the Superior Court of New Jersey, Law Division, Camden County, Docket No. L-3260-22.

Craig A. Altman, PC, attorneys for appellant (Samuel H. Burkhardt, on the briefs).

Reilly, McDevitt & Henrich, PC, attorneys for respondent Acme Markets, Inc. (Frederick E. Blakelock, on the brief).

Law Office of Linda S. Baumann, attorneys for respondent Green Meadows Landscaping, Inc. (Amanda M. Rochow, on the brief).

Law Office of Charles A. Little, Jr., attorneys for respondent Snow X, Inc. (Jill L. Teague, on the brief).

PER CURIAM

Plaintiff Gwenevere Love appeals from three orders: (1) a January 17, 2025 order granting summary judgment in favor of Acme Markets, Inc. (Acme); (2) a February 28, 2025 order granting summary judgment in favor of Snow X, Inc. (Snow X); and (3) a February 28, 2025 order granting summary judgment in favor of Green Meadows Landscaping, Inc. (Green Meadows). We affirm.

I.

On the evening of December 22, 2020, plaintiff slipped and fell, purportedly on ice, while exiting an Acme store in Audubon. The fall occurred as she stepped off the sidewalk and onto an asphalt parking lot. Acme had contracted with Green Meadows to perform snow removal and ice management services for the Audubon store. Green Meadows, in turn, had sub-contracted with Snow X to perform those services.

Plaintiff filed suit, alleging negligence against Acme, Green Meadows, and Snow X. In an amended complaint, plaintiff asserted defendants had

2

A-2103-24

"negligently maintained and controlled the . . . premises," causing her "to slip and fall on ice and/or snow," resulting in "severe and permanent injuries."

When asked at her deposition whether before falling she had seen "any ice on the asphalt at all," plaintiff responded, "It was getting dark. I don't know. . . . I can't answer. I don't know." Further questioning elicited these responses:

> [ACME COUNSEL]: . . . [D]o you know what you slipped on, . . . you said black ice?
>
> [PLAINTIFF]: Yes, ice. When I hit the ground, it was cold, so it had to be black ice, at least.
>
> [ACME COUNSEL]: I mean, did you see ice there?
>
> [PLAINTIFF]: No, I can't say I [had] seen it, but I felt it . . . under my shoe when my foot started sliding. It just slid, that was it.

Plaintiff did not report the incident to any Acme employee. Approximately four hours following the accident, however, she sought medical treatment at a hospital. Hospital records indicate plaintiff stated to a nurse she "fell on ice." She was diagnosed with a dislocated right knee and associated ligamentous injury, later undergoing arthroscopic surgery.

In December 2024, Acme moved for summary judgment, arguing there was "no evidence . . . plaintiff's accident resulted from an unreasonably dangerous condition or that Acme had actual or constructive notice of an

A-2103-24

unreasonably dangerous condition." Plaintiff opposed, contending there was a genuine dispute of material fact as "[e]vidence exists, beyond mere conjecture, speculation, surmise or guess, that [d]efendant chose not to inspect its property for dangerous conditions that would have been and should have been discovered." Plaintiff further contended genuine questions of fact existed regarding three issues: (1) whether her fall was precipitated by ice; (2) whether the outside temperature was sufficiently cold to generate and sustain ice; and (3) whether plaintiff had told a nurse she fell on ice.

During oral argument, the judge remarked that plaintiff's statement to the nurse—that she had fallen on ice—"might not even be admissible into evidence." Plaintiff's counsel questioned that characterization, and the judge elaborated:

> . . . The Appellate Division and Supreme Court have made clear that when a judge has to rule on a summary judgment motion, and in order to determine the record in the summary judgment motion, the judge has to consider certain evidence. If the admissibility of that evidence is in dispute, the trial [c]ourt judge at that point . . . has to make the evidentiary decision. What the plaintiff is arguing is that her statement as to slipping on ice or snow is relevant to the diagnosis . . . I think [that] is a weak argument. . . .
>
> . . . .

You have to prove . . . by a preponderance of the evidence that the plaintiff slipped on snow or ice rather than on anything else. All right? Once you get enough evidence that she slipped on snow or ice, then whether or not Acme was negligent does become an issue. We're going to get to that either way. All right? . . .

[PLAINTIFF'S COUNSEL]: Your Honor, I feel like we're starting to weigh the evidence --

THE COURT: Yes. Of course we're weighing the evidence because . . . it's a summary judgment motion. I have to evaluate the evidence.

[PLAINTIFF'S COUNSEL]: . . . Your Honor, that's not the purpose of a summary judgment motion. The purpose of a summary judgment motion is just to see whether there is a genuine dispute of material fact. And that fact has to be in the light most favorable to plaintiff.

THE COURT: Yes. All right.

[PLAINTIFF'S COUNSEL]: And to get to the position . . . where we're starting to rule on whether what plaintiff said was credible or not and we're saying it's hearsay, we're not doing that. We're making credibility arguments.

THE COURT: No, I've . . . explained that when I get a summary judgment motion, the result of which depends on certain evidentiary issues, I'm obligated to make a decision on the admissibility of that evidence . . . . And I've done that in regard to the hospital record.

The judge then addressed the distinction between favorable inferences and

speculation:

A-2103-24

THE COURT: . . . [Plaintiff's counsel] was right a few minutes ago when he said in regard to summary judgment motions, that the non-moving party is entitled to the benefit of all favorable inferences.

However, there's a difference between a favorable inference and speculation. All right? Now, it's sometimes . . . difficult to know where one begins and one ends.

Noting plaintiff saw neither snow nor ice, and in the absence of an interpretation of the weather data by an expert, the judge said to plaintiff's counsel,

You have to prove . . . by a preponderance of the evidence that plaintiff slipped on snow or ice rather than on anything else. All right? Once you get enough evidence that she slipped on snow or ice, then whether or not Acme was negligent . . . become[s] an issue.

Ultimately, the judge concluded the statement plaintiff made at the hospital concerning what caused her fall was inadmissible hearsay. Accordingly, the judge granted Acme's motion and dismissed with prejudice all claims against Acme in a January 17, 2025 order.

Subsequently, defendants Snow X and Green Meadows moved for summary judgment. Both parties argued there was no evidence plaintiff's fall "resulted from an unreasonably dangerous condition" of which they had actual or constructive notice. At the conclusion of oral argument on February 28, 2025,

6

the judge orally granted both motions, entering orders that same day. The judge incorporated his findings and reasoning from the January decision, assessing further:

> . . . It's a knee case. All right. As I recall, it's a serious knee injury. The plaintiff's statements concerning a physical pain, that type of stuff, that's clearly an exception to the hearsay rule. If one of the defendants wanted to use that statement, it's considered an admission by a party opponent. But can the plaintiff . . . use her own statement? . . . [S]uppose the manager of Acme Markets injures his back and goes to the hospital four hours after the plaintiff claims that she injured her knee slipping on ice, . . . or not knowing what she slipped [on] -- whatever version -- I'm not really casting aspersions on the version of this hypothetical. But the manager of Acme four hours after the accident shows up at the same hospital. And he tells the hospital personnel, yes, I injured myself . . . walking in our parking lot, and by the way, there . . . wasn't a spit's worth of ice or snow on the parking lot. It was clean. . . . That's not admissible. . . .
>
> Now, you may say well, they're not exactly the same thing. Well, fair enough. But the problem is that it's not a spontaneous statement. It's not like somebody is on the ground with a bone sticking out of their leg who tells the EMT I slipped on ice, while they're in agony. This is hours upon hours, so I don't think it's admissible.

On appeal, plaintiff argues her deposition testimony, statements made to hospital personnel, and the potential testimony of personnel are sufficient to create a genuine issue of material fact regarding whether she slipped on ice.

A-2103-24

Plaintiff contends the judge erred in granting defendants' summary judgment motions because he failed to apply the appropriate standard requiring the court to draw all favorable inferences in favor of the non-moving party and refrain from resolving factual disputes. Moreover, plaintiff argues the judge gave insufficient weight to weather reports supporting an inference that the parking lot surface re-froze after a daytime thaw, forming ice by the time of the evening accident. Lastly, plaintiff asserts there is a genuine question of fact whether defendants Snow X and Green Meadows followed terms of their contracts with Acme in failing to apply an "ice melting agent as necessary after a storm" or conducting "periodic inspections of the areas it had treated" to ensure their work was completed in a satisfactory manner.

## II.

We review de novo a grant of summary judgment, applying the same standard as the trial court. Samolyk v. Berthe, 251 N.J. 73, 78 (2022). Summary judgment is proper "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact challenged and that the moving party is entitled to a judgment or order as a matter of law." R. 4:46-2(c). The court must "consider whether the competent evidential materials presented, when viewed

8

in the light most favorable to the non-moving party, are sufficient to permit a rational factfinder to resolve the alleged disputed issue in favor of the non-moving party." Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 540 (1995).

A summary judgment motion "should be granted, in particular, 'after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.'" Friedman v. Martinez, 242 N.J. 449, 472 (2020) (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986)). "Of course, there is in this process a kind of weighing that involves a type of evaluation, analysis and sifting of evidential materials. This process, however, is not the same kind of weighing that a factfinder (judge or jury) engages in when assessing the preponderance or credibility of evidence." Brill, 142 N.J. at 536. "If there exists a single, unavoidable resolution of the alleged disputed issue of fact, that issue should be considered insufficient to constitute a 'genuine' issue of material fact for purposes of Rule 4:46-2." Id. at 540 (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986)).

Our review of the record supports the judge's conclusions. First, the judge properly determined the reference in the hospital records to plaintiff's statement

to medical personnel is inadmissible hearsay.  Hospital personnel would not be permitted to testify plaintiff told them she had slipped on ice.  See N.J.R.E. 802.

Second, notwithstanding plaintiff's claim she slipped on black ice based on how she felt as she fell, our examination of the record shows plaintiff testified that she did not observe ice or snow on the ground in the immediate area where she fell or in the parking lot generally.  That testimony is insufficient to create a genuine issue of material fact as to the existence of black ice.  The absence of sufficient proofs of this foundational aspect of the case renders moot defendants' duty to inspect and treat the areas concerned.  Moreover, nothing in the contract between Acme and co-defendants mandated constant ice-watch duty.  To withstand a motion for summary judgment in a negligence action, a "mere possibility" of causation is not enough.  Mijon v. Acquaire, 51 N.J. Super. 426, 441 (App. Div. 1958).  In this regard, the judge properly found plaintiff did not "make a showing sufficient to establish the existence of an element essential to that party's case."  Friedman, 242 N.J. at 472 (quoting Celotex, 477 U.S. at 322).

Third, without expert interpretation of the weather data, the judge was under no obligation to make inferences from a lay perspective.  See D'Alessandro v. Hartzel, 422 N.J. Super. 575, 578 (App. Div. 2011).

A-2103-24

On this record, we are satisfied the judge drew the appropriate distinction between inferences and conjecture, engaging in the "kind of weighing that involves a type of evaluation, analysis and sifting of evidential materials" without intruding on the factfinding function of the jury.  Brill, 142 N.J. at 536.

Affirmed.

I hereby certify that the foregoing is
a true copy of the original on file in
my office.

M.C. Harley

Clerk of the Appellate Division

A-2103-24