**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3292-18T3

ARCELIE WILLIAMS and
KEVIN WILLIAMS,

      Plaintiffs-Appellants,

v.

J.C. PENNEY COMPANY, INC.,
J.C. PENNEY CORPORATION,
INC.,[1] SCHINDLER ENTERPRISES,
INC. and SCHINDLER ELEVATOR
CORPORATION,

      Defendants-Respondents.

_____

Argued February 10, 2020 – Decided September 23, 2020

Before Judges Fasciale and Mitterhoff.

On appeal from the Superior Court of New Jersey, Law Division, Gloucester County, Docket No. L-0898-17.

---

[1] Defendant-Respondent J.C. Penney Corporation, Inc. was also improperly designated as J.C. Penney Company, Inc. at the trial level.

Kenneth S. Saffren argued the cause for appellants (Saffren & Weinberg, attorneys; Kenneth S. Saffren and Jonathan H. Kaplan, of counsel and on the brief).

James L. Sonageri argued the cause for respondents (Sonageri & Fallon, LLC, attorneys; James L. Sonageri, on the brief).

The opinion of the court was delivered by

MITTERHOFF, J.A.D.

Plaintiffs Arcelie Williams and Kevin Williams appeal the Law Division's March 1, 2018 decision that granted summary judgment in favor of defendant J.C. Penney Company, Inc. (JCP), and defendants Schindler Enterprises, Inc., and Schindler Elevator Corporation.[2] On appeal, plaintiffs argue that (1) the motion judge erred in granting summary judgment to defendants because constructive notice existed; and (2) the judge erred in granting summary judgment to defendants because the doctrine of res ipsa loquitor applied. Having reviewed the record, and in light of the applicable law, we affirm the motion judge's grant of summary judgment as to Schindler, and reverse and remand the judge's grant of summary judgment as to JCP.

We discern the following facts from the record. On August 3, 2015, plaintiffs were shopping at the JCP store located at the Deptford Mall in

---

[2] Hereafter, we refer to both Schindler entities singularly as "Schindler."

Deptford Township, New Jersey. While on the second level of the JCP store, plaintiffs attempted to use an escalator to descend to the first level. Arcelie had used this escalator on prior occasions without incident. While entering the escalator, Arcelie's left foot got caught on a metal platform that was immediately in front of and connected to the escalator. Prior to the fall, Arcelie did not look down, and did not notice anything unusual with the escalator. The escalator platform was raised from the ground, with a gap of approximately one to one-and-a-half inches between the platform and the floor. Arcelie tripped and fell, consequently tearing the meniscus in her left leg.

Plaintiffs filed a complaint against JCP and Schindler.[3] Plaintiffs alleged that defendants were negligent in failing to inspect or repair the escalator, or to warn plaintiffs of the existence of the dangerous condition. After the close of discovery, defendants moved for summary judgment. Defendants argued that plaintiffs had failed to show that defendants had actual or constructive knowledge of the alleged dangerous condition. Defendants also maintained that, under these facts, the doctrine of res ipsa loquitor did not

_____

[3] Plaintiffs sought damages for Arcelie's physical injuries, as well as damages relating to loss of consortium for Kevin.

A-3292-18T3

apply because a jury would be forced to speculate as to whether defendants were negligent. Plaintiffs countered that as invitees, defendants owed them a duty to discover and eliminate dangerous conditions in JCP's store, which included the raised platform in front of the escalator. Plaintiffs argued that defendants had constructive notice that the platform was dangerous because the escalator was in an area of the store with significant foot traffic by customers and employees. Plaintiffs also argued that defendants were liable under a theory of res ipsa loquitor, alleging that Arcelie's injury at the top of the escalator was an injury that bespeaks negligence.

The motion judge determined that plaintiffs failed to provide sufficient evidence as to whether defendants had actual or constructive notice of the dangerous condition. The judge found that plaintiffs provided no testimony explaining JCP's procedures for routine maintenance and inspections, nor any expert testimony detailing whether the metal platform that Arcelie tripped on was defective or needed to be repaired at the time of her fall. The judge found plaintiffs' argument that they were entitled to relief under a theory of res ipsa loquitor to be unavailing because Arcelie "could have caused or contributed to the occurrence in which she was injured." The judge concluded that "even

4

viewing the facts most favorable to the plaintiff, no genuine issue of material facts exists such that a rational jury could find for the plaintiff."

Thus, the judge entered an order granting summary judgment in favor of both defendants and dismissing plaintiffs' complaint with prejudice. This appeal ensued.

On appeal, plaintiffs present the following point headings for our review:

> I. STANDARD OF REVIEW.
>
> II. THE TRIAL COURT ERRED IN GRANTING SUMMARY JUDGMENT TO . . . DEFENDANTS WHERE DEFENDANTS WERE NEGLIGENT, GENUINE ISSUES OF MATERIAL FACT EXIST AND PLAINTIFFS HAVE ESTABLISHED CONSTRUCTIVE NOTICE.
>
> A. GENERAL NEGLIGENCE AND DEFENDANTS' DUTY TO PLAINTIFFS.
>
> B. PLAINTIFFS HAVE ESTABLISHED CONSTRUCTIVE NOTICE OF THE DEFECT.
>
> III. THE TRIAL COURT FURTHER ERRED IN GRANTING SUMMARY JUDGMENT WHERE THE DOCTRINE OF RES IPSA LOQUITOR APPLIED.

We review a ruling on a summary judgment motion de novo, applying the same standard governing the trial court. Conley v. Guerrero, 228 N.J. 339, 346 (2017). Summary judgment is appropriate if "the pleadings, depositions,

answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact challenged and that the moving party is entitled to a judgment or order as a matter of law." R. 4:46-2(c); see also Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 540 (1995).  We must view the evidence in a light most favorable to the non-moving party to determine whether a rational factfinder could resolve the issue in favor of that party.  Brill, 142 N.J. at 540.  We review issues of law de novo and accord no deference to the trial judge's legal conclusions.  Nicholas v. Mynster, 213 N.J. 463, 478 (2013).

At the outset, we conclude that the motion judge correctly concluded that the doctrine of res ipsa loquitur does not apply under these facts. "[I]t is ordinarily a plaintiff's burden to prove negligence, and [negligence] is never presumed."  Khan v. Singh, 200 N.J. 82, 91 (2009) (citing Hansen v. Eagle-Picher Lead Co., 8 N.J. 133, 139 (1957)).  However, "[t]he doctrine of res ipsa loquitur permits an inference of defendant's negligence 'where (a) the occurrence itself ordinarily bespeaks negligence; (b) the instrumentality was within the defendant's exclusive control; and (c) there is no indication in the circumstances that the injury was the result of the plaintiff's own voluntary act or neglect.'"  Buckelew v. Grossbard, 87 N.J. 512, 525 (1981) (quoting

Bornstein v. Metro. Bottling Co., 26 N.J. 263, 269 (1958)); see also Khan, 200 N.J. at 91. This inference is permissive, and "the [finder of fact] is free to accept or reject" it. Buckelew, 87 N.J. at 526. "Res ipsa loquitor is not a panacea for the . . . doomed negligence cause of action." Szalontai v. Yazbo's Sports Café, 183 N.J. 386, 400 (2005).

We agree with the motion judge that, based on the record, the doctrine of res ipsa loquitur is inapplicable. Arcelie admitted that she did not look down at the metal platform before walking onto the subject escalator. Therefore, it is possible that Arcelie was acting negligently herself when she tripped and fell. Since plaintiffs did not establish the requisite elements required to invoke the doctrine of res ipsa loquitor, we agree with the motion judge's decision to grant summary judgment in favor of all defendants on that issue.

Plaintiffs also argue that the motion judge erred in granting summary judgment to defendants on the theory of negligence. We agree with respect to JCP, but disagree as to Schindler.

In order to sustain their negligence claim, plaintiffs had the burden to demonstrate four elements: "(1) a duty of care, (2) a breach of that duty, (3) proximate cause, and (4) actual damages." Townsend v. Pierre, 221 N.J. 36, 51 (2015) (internal quotation marks omitted) (quoting Polzo v. Cnty. of Essex,

196 N.J. 569, 584 (2008)). Whether a person owes a duty requires courts to weigh several factors including "the relationship of the parties, the nature of the attendant risk, the opportunity and ability to exercise care, and the public interest in the proposed solution." Hopkins v. Fox & Lazo Realtors, 132 N.J. 426, 439 (1993) (citing Goldberg v. Housing Auth. of Newark, 38 N.J. 578, 583 (1962)).

Although the motion judge applied the same duty of care to both JCP and Schindler, we conclude that JCP owed a different, and greater, duty of care to plaintiffs than Schindler. Although the relationship of Schindler is not explicitly stated in the submissions of the parties, we infer from the record that Schindler installed the escalator. As such, Schindler owed a duty to perform the installation in a manner generally accepted by companies that install such equipment by reason of their specialized expertise and experience. Heyer v. Jersey Cent. Power & Light Co., 106 N.J.L. 211, 213 (E. & A. 1929). Consequently, Plaintiffs would be required to show that Schindler improperly installed the metal platform of the escalator.

Where, as here, the claims involve "a defect in a complex instrumentality, an expert is frequently required to assist the jury in understanding the mechanical intricacies and weighing competing theories of

causation." Ford Motor Credit Co. v. Mendola, 427 N.J. Super. 226, 236 (App. Div. 2012) (citing Lauder v. Teaneck Ambulance Corps, 368 N.J. Super. 320, 330-31 (App. Div. 2004)); see also Jimenez v. GNOC, Corp., 286 N.J. Super. 533, 544-47 (App. Div. 1996) (indicating that an escalator is a complex instrumentality). The intricacies of the installation and technical maintenance of the escalator entails "'a complex process involving assessment of a myriad of factors' that 'is beyond the ken of the average juror.'" Davis v. Brickman Landscaping, 219 N.J. 395, 408 (2014) (quoting Giantonnio v. Taccard, 291 N.J. Super. 31, 44 (App. Div. 1996)). Plaintiffs' decision not to introduce expert testimony is fatal to the claims against Schindler. A jury would be required to engage in "sheer speculation" as to the possible causes of the allegedly improper installation or maintenance of the metal platform of the escalator. Jimenez, 286 N.J. Super. at 546 (citing Dombrowska v. Kresge-Newark, Inc., 75 N.J. Super. 271, 274-75 (App. Div. 1962)). Thus, we affirm the trial judge's grant of summary judgment in favor of Schindler on the issue of negligence.

We reach a different result with respect to JCP. As indicated, whether a duty of care exists involves balancing several factors: "the relationship of the parties, the nature of the attendant risk, the opportunity and ability to exercise

care, and the public interest in the proposed solution."  Hopkins, 132 N.J. at 439.  As customers, plaintiffs were both invitees.  It is well-settled that, with respect to invitees, the "duty of due care requires a business owner to discover and eliminate dangerous conditions, to maintain the premises in safe condition, and to avoid creating conditions that would render the premises unsafe."  Nisivoccia v. Glass Gardens, Inc., 175 N.J. 559, 563 (2003) (citing O'Shea v. K Mart Corp., 304 N.J. Super. 489, 492-93 (App. Div. 1997)).  JCP, as the business owner, also had the opportunity and ability to exercise care to prevent injuries.  See Kuzmicz v. Ivy Hill Park Apts., Inc., 147 N.J. 510, 517 (1997) (citation omitted) (the "underlying rationale is that [business owners] are in the best position to control the risk of harm.  Ownership or control of the premises, for example, enables a party to prevent the harm.").  Moreover, there is a clear public interest in JCP providing a reasonably safe space for the use of its customers. See Butler v. Acme Markets, Inc., 89 N.J. 270, 284 (1982).

The motion judge found that there was no genuine issue of material fact as to whether JCP had actual or constructive notice of the risen platform near the escalator.  We disagree.

Typically, "in addition to establishing a defendant's duty of care, a plaintiff must also establish the defendant had actual or constructive

10                                                                                  A-3292-18T3

knowledge of the dangerous condition that caused the accident." Prioleau v. Kentucky Fried Chicken, Inc., 434 N.J. Super. 558, 570 (App. Div. 2014) (citing Nisivoccia, 175 N.J. at 563). Focusing the discussion on constructive notice, "[a] defendant has constructive notice when the condition existed 'for such a length of time as reasonably to have resulted in knowledge and correction had the defendant been reasonably diligent.'" Troupe v. Burlington Coat Factory Warehouse Corp., 443 N.J. Super. 596, 602 (App. Div. 2016) (quoting Parmenter v. Jarvis Drug Stores, Inc., 48 N.J. Super. 507, 510 (App. Div. 1957)). "Constructive notice can be inferred in various ways." Ibid. "The characteristics of the dangerous condition giving rise to the slip and fall . . . or eyewitness testimony . . . may support an inference of constructive notice about the dangerous condition." Ibid.

Here, we conclude that there was sufficient circumstantial evidence from which a jury could find that JCP had constructive notice of the dangerous condition that caused Arcelie's injury. A jury could reasonably infer that JCP was on constructive notice by virtue of the fact that the escalator and the raised platform were in an area that would be frequented by both customers and

11

employees.[4]  As the owner of the premises, JCP was in the best position to discover and fix dangerous conditions, including the raised platform.  See Prioleau, 434 N.J. Super. at 570.  Under these facts, a jury could determine that JCP should have been on notice of an elevated metal platform in front of the escalator.  Troupe, 443 N.J. Super. at 602.  If so, a jury could determine that JCP's failure to take precautionary measures to cure the dangerous condition constituted negligence.  For example, JCP could have erected warning signs in lieu of making repairs, see Prioleau, 434 N.J. Super. at 583, or placed yellow tape on the floor near the platform of the escalator.

Thus, we reverse the trial judge's grant of summary judgment in favor of JCP, and remand the matter for trial, at which time a jury may determine whether defendant was negligent in failing to take precautions to address the dangerous condition created by the raised metal platform.  To the extent we have not addressed any of plaintiffs' remaining arguments, we conclude that they are without sufficient merit to warrant discussion in a written opinion.  R. 2:11-3(e)(1)(E).

---

[4]  In fact, Arcelie testified that there was a JCP employee standing right by the escalator at the time of the accident.

A-3292-18T3

Affirmed in part and remanded.  We do not retain jurisdiction.

I hereby certify that the foregoing
is a true copy of the original on
file in my office.

CLERK OF THE APPELLATE DIVISION